IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

KEYAIRA PORTER, *Appellant.*

No. 1 CA-CR 18-0301
FILED 4-9-2020

Appeal from the Superior Court in Maricopa County
No.  CR2017-137407-001
The Honorable Monica S. Garfinkel, Judge *Pro Tempore*

**REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Mikel Steinfeld
*Counsel for Appellant*

**OPINION**

Chief Judge Peter B. Swann delivered the opinion of the Court, in which
Judge Kenton D. Jones joined. Presiding Judge Paul J. McMurdie dissented.

**S W A N N**, Judge:

¶1        The state, prosecuting a black defendant, sought to remove all persons of color from the jury pool.  It peremptorily struck the only two black prospective jurors and attempted unsuccessfully to strike for cause the only other person of color on the panel.  The defendant raised a challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986).  For one of the peremptory strikes, the state proffered two facially race-neutral explanations, one of which was based on the prospective juror's demeanor.  The trial court denied the *Batson* challenge without expressly addressing either the demeanor-based explanation or the racially disproportionate impact of the strikes.  Applying *Snyder v. Louisiana*, 552 U.S. 472 (2008), we hold that the court was required to make explicit findings on those two points.  We remand to permit the trial court to make the necessary findings or, if the passage of time has rendered that impossible, to vacate the defendant's conviction and retry the case.

## FACTS AND PROCEDURAL HISTORY

¶2        Keyaira Porter, a black woman, was tried in March 2018 for aggravated assault against a police officer and resisting arrest.

¶3        During jury selection, Porter raised a *Batson* challenge based on the state's use of peremptory strikes against the only two black individuals on the prospective jury panel (Prospective Jurors 2 and 20) and its earlier unsuccessful attempt to strike for cause the only other potential juror of color (Prospective Juror 10, against whom neither party exercised a peremptory strike).

¶4        The prosecutor explained that she struck Prospective Juror 2 because that juror's "brother was convicted of a crime that is of the same nature as this matter, aggravated assault," and "[s]he did not seem to be very sure with her responses to the State whether how [sic] that impacted her or not."  As to Prospective Juror 20, the prosecutor explained that she struck that juror because she "had been on a criminal jury in the past which had found an individual not guilty" and "had also been the foreperson of that jury."  Finally, the prosecutor explained that her unsuccessful request to strike Prospective Juror 10 for cause was premised on the fact that Prospective Juror 10 "had a lot of emotional things going on with her, considering her daughter had just been killed not even a year ago," and "she seemed to be very upset."  The state asserted that it had not based any of its decisions on "anything to do with anyone's color or nationality."

¶5 Porter pointed out that, in response to the state's questions, Prospective Juror 2 stated that her convicted brother was treated fairly, that his experience would not influence her decision-making as a juror, and that she could follow the rules provided by the court. Porter emphasized that "now there literally is no African American jurors that even remain."

¶6 The trial court denied the *Batson* challenge. The court held:

> The Court has reviewed the other strikes by both parties in this case, as well as the Court's notes. The Court does note that the State also struck juror[] 19 [], who . . . had rendered [a] not guilty verdict[] . . . .
>
> Juror 25 served as a foreperson on a prior jury, and juror 25 was stricken by the State.
>
> The Court does find that it's reasonable that the State would want to eliminate a juror that had an experience where their close family member was arrested for a similar charge to that which is involved in this case, and to strike jurors who may be stronger personalities or are willing to acquit based on the evidence presented to them.
>
> So the Court does find that the explanation given by the State is race neutral, and the strikes will be allowed for jurors . . . 2 and 20.
>
> And juror number 10, the Court had even expressed some concern about the juror's concern about her ability to focus on this case based upon her daughter's recent death, killed in a car accident.
>
> So the Court does not find any purposeful[] discrimination as to the three identified jurors.

¶7 The jury was seated and sworn, and ultimately found Porter not guilty of aggravated assault but guilty of resisting arrest. The court entered judgment on the verdict and imposed supervised probation. Porter appeals.

## DISCUSSION

I.    THE TRIAL COURT FAILED TO MAKE NECESSARY FINDINGS REGARDING PORTER'S *BATSON* CHALLENGE.

**¶8**    *Batson*, the seminal case, held that "the central concern of the . . . Fourteenth Amendment was to put an end to government discrimination on account of race," and that purposeful "[e]xclusion of black citizens from service as jurors [in a criminal case] constitutes a primary example of the evil the Fourteenth Amendment was designed to cure." 476 U.S. at 85. *Batson* recognized that such exclusion violates both defendants' and excluded jurors' equal protection rights and also undermines public confidence in the justice system. *Id.* at 86–88; *see also, e.g., Flowers v. Mississippi*, 139 S.Ct. 2228, 2242 (2019). Racial discrimination in the jury selection process "is at war with our basic concepts of a democratic society and a representative government." *Johnson v. California*, 545 U.S. 162, 172 (2005) (citation omitted). "Our Constitution's Framers recognized that trial by jury is 'the very palladium of free government.' The Federalist No. 83 (Alexander Hamilton). For the jury to perform its historic and beneficial role in our democracy, it must be constituted with no taint of purposeful discrimination based on race . . . ." *United States v. Alanis*, 335 F.3d 965, 970 (9th Cir. 2003) (footnote omitted). When jury selection is "tainted with racial bias, that 'overt wrong . . . casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial.'" *Miller-El v. Dretke ("Miller-El II")*, 545 U.S. 231, 238 (2005) (citation omitted). We take from these commands of our highest court an obligation to be vigilant in guarding against racial discrimination in jury selection, and to refrain from passively affirming convictions when we see a pattern of peremptory strikes against a racial group.

**¶9**    To combat racial discrimination in the jury selection process,[1] *Batson* and its progeny established a three-step analytical framework:

> [O]nce the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then

---

[1]    We recognize that *Batson* has been extended to contexts beyond racial discrimination by criminal prosecutors. *See Flowers*, 139 S.Ct. at 2243. The case before us, however, presents a classic *Batson* issue.

decide (step three) whether the opponent of the strike has
proved purposeful racial discrimination.

*Purkett v. Elem*, 514 U.S. 765, 767 (1995). Though "[s]tates do have flexibility
in formulating appropriate procedures to comply with *Batson*," *Johnson*, 545
U.S. at 168, Arizona has not elaborated on the basic framework, *see, e.g.,*
*State v. Urrea*, 244 Ariz. 443, 445, ¶ 9 (2018).

**¶10**        The *Batson* framework is not pro forma—it "is designed to
produce actual answers to suspicions and inferences that discrimination
may have infected the jury selection process." *Johnson*, 545 U.S. at 172. "In
the decades since *Batson*, th[e Supreme] Court's cases have vigorously
enforced and reinforced the decision, and guarded against any
backsliding." *Flowers*, 139 S.Ct. at 2243.

**¶11**        Step one of the *Batson* framework may be satisfied by, among
other things, a pattern of strikes against minority jurors. *Batson*, 476 U.S. at
97. Step two, in turn, may be satisfied by the striking party's offer of any
facially race-neutral explanation for the strikes. *Purkett*, 514 U.S. at 768;
*Hernandez v. New York*, 500 U.S. 352, 360 (1991) (plurality opinion). At step
two, even a "silly or superstitious" race-neutral reason will suffice, because
the ultimate burden of persuasion never shifts from the opponent of the
strikes. *Purkett*, 514 U.S. at 768. It is at step three that the trial court must
determinate whether the proffered reasons are pretexts for purposeful
discrimination. *Id.*

**¶12**        Step three is critical—"[i]f any facially neutral reason sufficed
to answer a *Batson* challenge, then *Batson* would not amount to much more
than [its ineffective predecessor case]." *Miller-El II*, 545 U.S. at 240. The
prosecutor's demeanor often is "the best evidence" in step three. *Snyder*,
552 U.S. at 477. But it is not the only evidence. "Determining whether
invidious discriminatory purpose was a motivating factor demands a
sensitive inquiry into such circumstantial . . . evidence of intent as may be
available." *Foster v. Chatman*, 136 S.Ct. 1737, 1748 (2016) (citation omitted).
The trial court must "consider the prosecutor's race-neutral explanations in
light of *all* of the relevant facts and circumstances, and in light of the
arguments of the parties." *Flowers*, 139 S.Ct. at 2243 (emphasis added); *see*
*also Snyder*, 552 U.S. at 478 (holding that "all of the circumstances that bear
upon the issue of racial animosity must be consulted"); *Miller-El II,* 545 U.S.
at 252 (holding that *Batson* "requires the judge to assess the plausibility of
[a race-neutral] reason in light of all evidence with a bearing on it").

**¶13**        Here, the trial court made no findings concerning the prosecutor's demeanor. And while it did determine that the proffered race-neutral justifications were indeed race neutral, it did not make a determination that those justifications were *credible* in the face of the pattern of peremptory strikes. And to the extent that the court satisfied itself that the strike of Juror 20 was supported by the strike of another juror with similar experience, there was no such analysis of the strike of Juror 2.

**¶14**        The step-three analysis necessarily is gestalt. *See Flowers*, 139 S.Ct. at 2251 (emphasizing that *Batson*-violation decision was not based on any one fact alone, but on "all of the relevant facts and circumstances taken together"); *see also Jones v. State*, 938 A.2d 626, 633 (Del. 2007) ("[T]he reason offered for each particular strike cannot be viewed in isolation; rather, the plausibility of each explanation 'may strengthen or weaken the assessment of the prosecution's explanation as to other challenges.'" (citation omitted)). Comparison of stricken and non-stricken jurors' characteristics, as well as comparison of how the prosecutor questioned those jurors, may be relevant. *See Flowers*, 139 S.Ct. at 2244, 2246–51; *but see State v. Medina*, 232 Ariz. 391, 405, ¶ 48 (2013) (declining to perform comparative analysis when comparison not raised at trial). The pattern or proportional racial impact of the strikes also may be relevant. *See Flowers*, 139 S.Ct. at 2244, 2251 (emphasizing the evidentiary import of state's persistent pattern of striking almost all black prospective jurors); *Medina*, 232 Ariz. at 405, ¶ 50 ("The presence of other minority jurors on the panel is evidence of the State's nondiscriminatory motive."). And when a party asserts a juror was stricken based on his or her demeanor, the court *must* evaluate whether the alleged demeanor credibly can be attributed to the juror. *Snyder*, 552 U.S. at 477. "[I]t may be uncomfortable and unpleasant for a trial judge to undertake such a difficult and subtle inquiry with the precision and persistence that may be required to determine counsel's true reasons for striking a juror." *Coombs v. Diguglielmo*, 616 F.3d 255, 264 (3d Cir. 2010). But "if *Batson* is to be given its full effect, trial courts *must* make precise and difficult inquiries to determine if the proffered reasons for a peremptory strike are the race-neutral reasons they purport to be, or if they are merely a pretext for that which *Batson* forbids," bearing in mind that purposeful discrimination need not always result from conscious racism. *Id.* (emphasis added).

**¶15**        The trial court's ultimate finding is entitled to great deference, *Hernandez*, 500 U.S. at 366–69 (plurality opinion), and we will not reverse the denial of a *Batson* challenge absent clear error, *State v. Newell*, 212 Ariz. 389, 400, ¶ 52 (2006). But "[d]eference does not by definition preclude relief." *Miller-El v. Cockrell ("Miller-El I")*, 537 U.S. 322, 340 (2003). We must ensure that the *Batson* framework is "vigorously enforced" to serve its

goals. *Flowers*, 139 S.Ct. at 2243. Otherwise, a *Batson* analysis becomes nothing more than a rubber stamp allowing the government to discriminate with impunity.

**¶16** The *Batson* framework contemplates meaningful appellate review, not blind assent. *See Miller-El I*, 537 U.S. at 340; *State v. Lucas*, 199 Ariz. 366 (App. 2001); *State v. Anaya,* 170 Ariz. 436 (App. 1991). Express findings by the trial court enable such review and "foster[] confidence in the administration of justice without racial animus." *United States v. Perez*, 35 F.3d 632, 636 (1st Cir. 1994); *see also United States v. Vann*, 776 F.3d 746, 757 (10th Cir. 2015). To be sure, the trial "court need not make detailed findings addressing all the evidence before it," *Miller-El I*, 537 U.S. at 347, and, in Arizona, may even conduct the entire step-three analysis implicitly in some cases, *State v. Canez*, 202 Ariz. 133, 147, ¶ 28 (2002), *abrogated on other grounds by State v. Valenzuela*, 239 Ariz. 299 (2016).[2] But in other cases, express findings are essential.

**¶17** In *Snyder*, the United States Supreme Court held that when the trial court is presented with two explanations for a strike and one of them is based on the juror's demeanor, we cannot presume that the trial court credited the demeanor-based explanation simply because it denied the *Batson* challenge. 552 U.S. at 479. *Snyder* explained:

> [D]eference is especially appropriate where a trial judge has made a finding that an attorney credibly relied on demeanor in exercising a strike. Here, however, the record does not

---

[2] Some federal circuits have held otherwise. *See, e.g., Higgins v. Cain*, 720 F.3d 255, 268 (5th Cir. 2013) (broadly describing "the presence of a circuit split regarding whether a trial judge must make explicit findings of fact at *Batson*'s third step"); *United States v. McAllister*, 693 F.3d 572, 579–82 (6th Cir. 2012) (remanding for "explicit on-the-record findings" after trial court rejected *Batson* challenge without giving any indication that it engaged in the required three-step analysis); *United States v. Rutledge*, 648 F.3d 555, 557–62 (7th Cir. 2011) (remanding for adjudication of *Batson* challenge on the merits where trial court made no express findings regarding credibility of explanations that one juror was struck based purely on her demeanor and other was struck based on his voiced concern that he might be stereotyped based on his race); *Dolphy v. Mantello*, 552 F.3d 236, 239 (2d Cir. 2009) (remanding for adjudication of *Batson* challenge on the merits where trial court simply stated that the reason for the strike was race neutral, thereby failing to indicate that it credited the inherently suspect explanation that juror was struck based on obesity).

show that the trial judge actually made a determination concerning [the prospective juror]'s demeanor. The trial judge was given two explanations for the strike. Rather than making a specific finding on the record concerning [the prospective juror]'s demeanor, the trial judge simply allowed the challenge without explanation. It is possible that the judge did not have any impression one way or the other concerning [the prospective juror]'s demeanor. [The prospective juror] was not challenged until the day after he was questioned, and by that time dozens of other jurors had been questioned. Thus, the trial judge may not have recalled [the prospective juror]'s demeanor. Or, the trial judge may have found it unnecessary to consider [the prospective juror]'s demeanor, instead basing his ruling completely on the second proffered justification for the strike. For these reasons, we cannot presume that the trial judge credited the prosecutor's assertion that [the prospective juror] was nervous.

*Id.* The uncertainty identified in *Snyder* will exist in *every* case in which the trial court fails to expressly accept or reject a demeanor-based explanation that is accompanied by other facially race-neutral explanations. And because Arizona law provides that one non-race-neutral reason for a strike will taint any other neutral reason for the strike, *State v. Lucas*, 199 Ariz. 366, 369, ¶¶ 11–13 (App. 2001), *Snyder* bars blind affirmance when the trial court fails to credit expressly a demeanor-based explanation coupled with another explanation. *Snyder* thereby ensures that *Batson* is meaningfully enforced in such circumstances.

**¶18** The dissent emphasizes the Supreme Court's decision in *Thaler v. Haynes*, 559 U.S. 43 (2010). *See infra* ¶¶ 37–38. But *Thaler* did not alter *Snyder*. *Thaler* simply held that neither *Batson* nor *Snyder* (which, the Court noted, was temporally inapplicable in any event) established a "blanket" or "categorical" rule requiring that a judge personally observe and recall a prospective juror's demeanor. 559 U.S. at 48–49. It did *not* hold that express findings are never required. *See id.* And we can see why no findings were required in *Thaler*—that habeas case concerned a single strike based on a single explanation concerning a juror-behavior characterization that the defendant did not dispute. *Id.* at 45–46. By contrast, this case involves a successful effort to remove all of the prospective black jurors.

**¶19** The dissent also cites our state supreme court's decisions in *State v. Escalante-Orozco*, 241 Ariz. 254 (2017), and *State v. Lynch*, 238 Ariz.

84 (2015). *See infra* ¶ 40. As an initial matter, and as the dissent acknowledges, the United States Supreme Court reversed *Lynch*. *See Lynch v. Arizona*, 136 S.Ct. 1818 (2016). We further note that *Lynch* did not explain or cite authority to support its conclusory acceptance of implicit step-three findings. *See* 238 Ariz. at 104, ¶ 70. With respect to *Escalante-Orozco*, the trial court "did not share" the prosecutor's observation that a juror was inattentive, "so made 'no finding of that'" and relied instead on the prosecutor's alternative explanation for the strike—the juror's occupation. 241 Ariz. at 271–72, ¶ 36. We do not perceive that as inconsistent with *Snyder*. To the contrary, it appears that the trial court in *Escalante-Orozco* complied precisely with *Snyder*—it acknowledged that it could not verify the demeanor-based explanation and accepted a different, factually verifiable race-neutral explanation.

**¶20** Following the logic of *Snyder,* we hold today that when confronted with a *pattern* of strikes against minority jurors, the trial court must determine expressly that the racially disproportionate impact of the pattern is justified by *genuine,* not pretextual, race-neutral reasons. We recognize that this holding, though consistent with precedent, is more granular than this court's past *Batson* decisions. But to hold otherwise would be to transform deference to willful blindness. And though in *Canez* our state supreme court accepted an implicit step-three analysis for a *Batson* challenge when the state struck five of seven Hispanic panelists in a capital case, *Canez* predated *Snyder* and did not present a situation in which *all* prospective jurors of the same race as the defendant were stricken. *See* 202 Ariz. at 145–47, ¶¶ 16–28. We therefore do not read *Canez*—or the similar unpublished decisions cited by the dissent, *see infra* ¶ 39—as controlling in this case.

**¶21** Here, the defendant is black. The state struck Prospective Jurors 2 and 20, the only two black panelists, and attempted unsuccessfully to strike for cause Prospective Juror 10, the only other person of color on the panel. There cannot be a more stark pattern for *Batson* purposes than when the state attempts to remove *all* minorities from the jury. The state offered two facially race-neutral explanations for striking Prospective Juror 2: her brother's conviction for aggravated assault and the fact that "[s]he did not seem to be very sure with her responses to the State whether how [sic] that impacted her or not." The transcript reveals, however, that Prospective Juror 2 unambiguously stated that her brother's conviction would have no impact on her ability to serve as a juror. Accordingly, the uncertainty the prosecutor asserted was present in the juror's responses either must have been manifested in her demeanor or the assertion was pretextual. The trial court, however, made *no* finding concerning the juror's

demeanor. Without such a finding, the court's conclusory statement that there was no purposeful discrimination was not sufficient. We cannot presume that the court found that the state's pattern of strikes and attempted strikes against minority panelists was merely a race-neutral coincidence, and we see nothing in the record to suggest that it proceeded past step two of the *Batson* analysis. The dissent emphasizes that in "exceptional circumstances," including "where the court abandons its responsibilities under *Batson*, this court must not hesitate to act." *See infra* ¶ 31. On this point, we agree with the dissent. If the pattern in this case does not raise concern, then *Batson* is a dead letter.[3]

**¶22** Were we to defer to "implicit" findings that uphold a pattern of challenges to every minority juror, we would tacitly contribute to the perception that *Batson* is merely aspirational and can easily be sidestepped. We refuse to do so. In *Batson,* the United States Supreme Court set out to eliminate racial discrimination by the government, and it has unwaveringly confirmed its seriousness about that aim ever since. We agree with the dissent that our state supreme court could (and should) improve the *Batson* framework to promote the Supreme Court's purpose. But we hold in this case that existing Supreme Court precedent entitles Porter to a remand so that the trial court may apply *Batson* in the rigorous, unflinching manner that its authors intended. If the passage of time has made it impossible for the trial court to make reliable, fully informed findings under the *Batson* framework, the court must vacate Porter's conviction and hold a new trial.

II.  THE SUPERIOR COURT DID NOT ABUSE ITS DISCRETION BY INSTRUCTING THE JURY ON RESISTING ARREST UNDER A.R.S. § 13-2508(A)(1).

**¶23** In the interest of judicial efficiency in the event of a retrial on the merits, we address Porter's second argument on appeal.

---

[3] The dissent finds the record in this case "troubling" and shares our "misgivings" about the lack of support in the transcript for the prosecutor's explanation of the strike of Juror 2. *See infra* ¶ 29. The panel is therefore united in the view that this case presents the specter of racial discrimination. To a citizen who has been deprived of liberty based on a trial before a jury that may have been infused with racial discrimination, this is more than an academic concern that can wait for the next case. And we owe the public a duty to ensure that the courts will lead by example in purging discrimination from the justice system. We therefore do not hesitate to act.

**¶24** Porter was charged with resisting arrest. Under A.R.S. § 13-2508,

> A. A person commits resisting arrest by intentionally preventing or attempting to prevent a person reasonably known to him to be a peace officer, acting under color of such peace officer's official authority, from effecting an arrest by:
>
>> 1. Using or threatening to use physical force against the peace officer or another.
>>
>> 2. Using any other means creating a substantial risk of causing physical injury to the peace officer or another.

The direct complaint and information referenced only § 13-2508(A)(2). Before trial, however, the state requested a preliminary jury instruction that defined resisting arrest under both § 13–2508(A)(1) and (2). Over Porter's objection, the superior court granted the state's request and instructed the jury accordingly.

**¶25** Porter contends that the jury instruction effectively altered the elements of the resisting arrest charge, thereby impermissibly constituting "a change in the nature of the offense" without notice. *State v. Freeney*, 223 Ariz. 110, 113, ¶ 17 (2009). We review for abuse of discretion. *State v. Johnson*, 198 Ariz. 245, 247, ¶ 4 (App. 2000).

**¶26** To enable preparation of a defense, a defendant has a constitutional right to notice of the nature of the charged offenses. *State v. Sanders*, 205 Ariz. 208, 213, ¶ 16 (App. 2003), *overruled on other ground by Freeney*, 223 Ariz. 114. Ariz. R. Crim. P. 13.1(a) therefore requires that a charging document be "a plain, concise statement of the facts sufficiently definite to inform the defendant of a charged offense." Amending a charge is constitutionally permitted without the defendant's consent if it does not change the nature of the offense or prejudice the defendant. *Sanders*, 205 Ariz. at 214, ¶ 19. "The charging document is deemed amended to conform to the evidence admitted during any court proceeding." Ariz. R. Crim. P. 13.5(b); *see Freeney*, 223 Ariz. at 114, ¶ 24 ("[C]ourts look beyond the indictment to determine whether defendants received actual notice of charges, and the notice requirement can be satisfied even when a charge was not included in the indictment.").

**¶27** We hold that the trial court did not abuse its discretion because the jury instruction did not change the nature of the offense. The direct complaint and information alleged that Porter created a substantial

risk of causing physical injury to the police officer, an allegation that encompassed Porter's using, or threatening to use, physical force against him. Further, Porter cannot show prejudice. At the preliminary hearing, eyewitness testimony established that Porter swung at the officer, scuffled with him, and tried to bite his arm. Porter, therefore, knew well before trial that § 13-2508(A)(1) was a basis for the resisting arrest charge, and she had a full and fair opportunity to prepare her defense. *See State v. Barber*, 133 Ariz. 572, 577 (App. 1982) (noting propriety of amendment to an indictment hinges on whether the amendment violated the defendant's right to "notice of the charges against him with an ample opportunity to prepare to defend against them"); *see also Johnson*, 198 Ariz. at 249, ¶ 13 ("To be meaningful, an 'ample opportunity to prepare to defend' against amended charges generally must occur before the state has rested its case." (citation omitted)).

## CONCLUSION

**¶28**        We remand for further proceedings regarding Porter's *Batson* challenge.

**M c M U R D I E, Judge, dissenting:**

**¶29**        Because I would affirm the superior court's ruling on Porter's objection to the strikes of Prospective Jurors 2 and 20, disagree with the majority's interpretation of *Snyder v. Louisiana*, 552 U.S. 472 (2008), and find that the majority's holding elevates form over substance in a manner that will do little to advance the purposes of *Batson v. Kentucky*, 476 U.S. 79 (1986), I dissent.

**A.        Under Arizona's Current *Batson* Jurisprudence, the Superior Court Did Not "Clearly Err" by Overruling Porter's Objection to the State's Strikes.**

**¶30**        I do not disagree with the majority that the circumstances surrounding the strikes and the State's explanation for striking Prospective Juror 2 are troubling. The State's alleged concerns about Prospective Juror 2's ability to be impartial because of her brother's conviction for aggravated assault cannot be readily discerned from the transcript of the jury selection. I also believe, in line with the majority, that we should not blind ourselves to the result of the State's strikes in this case, which was to ensure that the jury seated to decide the criminal charges against Porter, an African-American, did not contain a single African-American juror.

Consequently, I share the majority's misgivings with the State's explanation for striking Prospective Juror 2.

¶31          However, the operative question before us in this case under the traditional *Batson* analysis—which, as the majority acknowledges, *supra* ¶ 15, remains unaltered in Arizona—is whether the superior court *clearly erred* by failing to find the striking party was "motivated in substantial part by discriminatory intent." *Flowers v. Mississippi*, 139 S. Ct. 2228, 2244 (2019); *see also State v. Medina*, 232 Ariz. 391, 404, ¶ 43 (2013). From the beginning, the *Batson* court recognized the trial court's unique role in deciding this question and the deference that must be accorded to its findings as a result. *See Batson*, 476 U.S. at 98, n.21 ("Since the trial judge's findings in the context under consideration here largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference."). In the years following *Batson*, both the United States Supreme Court and our supreme court have continuously reaffirmed this principle. *See, e.g.*, *Flowers*, 139 S. Ct. at 2244 ("The Court has described the appellate standard of review of the trial court's factual determinations in a *Batson* hearing as 'highly deferential.'" (quoting *Snyder*, 552 U.S. at 479)); *Hernandez v. New York*, 500 U.S. 352, 369 (1991) ("In *Batson,* we explained that the trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal . . . ."); *State v. Escalante-Orozco*, 241 Ariz. 254, 272, ¶ 36 (2017) ("[W]e defer to the trial court's assessment of the prosecutor's credibility in explaining his strikes."), *abrogated in part on other grounds by State v. Escalante*, 245 Ariz. 135, 140, ¶¶ 15–16 (2018); *State v. Newell*, 212 Ariz. 389, 401, ¶ 54 (2006) ("[T]he trial court's finding at this step is due much deference.").

¶32          Of course, the deferential standard of review we usually apply to the superior court's findings does not obviate its duty to meaningfully evaluate the striking party's proffered explanations for each strike. Indeed, it makes that obligation more pressing. *Flowers*, 139 S. Ct. at 2243 ("In criminal trials, trial judges possess the primary responsibility to enforce *Batson* and prevent racial discrimination from seeping into the jury selection process."). Thus, when the superior court's findings are unsupported by the record so that we are left with a "definite and firm conviction that a mistake has been committed," *Hernandez*, 500 U.S. at 370 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)), or where the court abandons its responsibilities under *Batson*, this court must not hesitate to act. Such situations present the types of "exceptional circumstances" that override the deference we would generally afford a superior court's ruling. *Snyder*, 552 U.S. at 477 (quoting *Hernandez*, 500 U.S. at 366).

¶33 But no such exceptional circumstances exist in this case. In my view, the superior court here did exactly as was required under Arizona's current *Batson* jurisprudence; it considered the State's explanations and Porter's arguments, found one of the State's proffered reasons for striking Prospective Juror 2 credible—and, in fact, reasonable—and concluded Porter had not met her burden of showing the State was motivated by discriminatory intent. Striking jurors whose perspectives might be influenced by the experiences of their family members has been recognized as an accepted and permissible trial strategy. *See, e.g., Medina*, 232 Ariz. at 404–05, ¶¶ 47–50 (upholding strike in part based on the similarity between mental-health conditions of juror's husband and defendant); *State v. Hardy*, 230 Ariz. 281, 286, ¶¶ 13–15 (2012) (juror struck because brother's drug addiction might make her sympathetic to mitigating evidence of the defendant's familial drug abuse); *State v. Reyes*, 163 Ariz. 488, 491 (App. 1989) (struck because juror's sister's conviction for one of the same charges raised against the defendant); *see also Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003) ("Credibility can be measured by, among other factors . . . whether the proffered rationale has some basis in accepted trial strategy.").

¶34 The fact that the superior court did not expressly credit the State's second proffered reason for striking Prospective Juror 2 is of no consequence. The superior court is "presumed to know the law and apply it in making [its] decisions," *State v. Lee*, 189 Ariz. 608, 616 (1997) (quoting *Walton v. Arizona*, 497 U.S. 639, 653 (1990), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584, 609 (2002)), including its obligation to consider "all of the circumstances that bear upon the issue of racial animosity," *Foster v. Chatman*, 136 S. Ct. 1737, 1748 (2016) (quoting *Snyder*, 552 U.S. at 479). By finding the State did not engage in purposeful discrimination by striking Prospective Juror 2, the court necessarily accepted the State's asserted perception of Prospective Juror 2's uncertainty about whether she would be influenced by her brother's conviction and found no other circumstance of discriminatory intent. To upset the court's conclusion based solely on our interpretation of statements within a cold transcript would be an unjustified invasion of the superior court's "pivotal role" in evaluating *Batson* challenges. *State v. Urrea*, 244 Ariz. 443, 447, ¶ 16 (2018) (quoting *Snyder*, 552 U.S. at 477); *see also Hernandez*, 500 U.S. at 365 ("As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'" (quoting *Wainwright v. Witt*, 469 U.S. 412, 428 (1985))).

¶35 Accordingly, under Arizona's current *Batson* jurisprudence, I do not believe we can say the superior court took an impermissible view of the evidence in reaching its conclusion that the State did not engage in

purposeful racial discrimination by striking Prospective Juror 2. *Hernandez*, 500 U.S. at 369 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (quoting *Anderson v. Bessemer*, 470 U.S. 564, 574 (1985))). I would, therefore, affirm the judgment, including the superior court's ruling on Porter's *Batson* challenges.[4]

**B.**  ***Snyder v. Louisiana* Does Not Require Trial Courts to Make Express Findings Crediting Demeanor-Based Explanations While Reviewing a *Batson* Challenge, and Arizona Courts Have Never Interpreted It as Holding So.**

**¶36**        The majority holds the United States Supreme Court's decision in *Snyder* requires us to remand the case to the superior court for it to expressly find whether it believed the State's demeanor-based explanation for striking Prospective Juror 2—that she seemed uncertain when she denied that her brother's conviction would affect her as a juror. As I noted above, I see little ambiguity in the superior court's ruling. The court explicitly stated that it found no purposeful discrimination as to the State's strike of Prospective Juror 2. Our different readings of the superior

---

4        Although not discussed by the majority, I briefly address Porter's arguments on appeal with respect to the State's strikes of both Prospective Jurors 2 and 20. Porter contends the depth of the prosecution's questioning regarding the prospective jurors' prior jury service and comparisons between the nonminority jurors similarly situated to Prospective Juror 2 reveals the State's explanations for striking Prospective Jurors 2 and 20 were pretextual. *See Miller-El v. Dretke*, 545 U.S. 231, 241 (2005) (approving comparative-juror and depth-of-questioning analysis). But it was unnecessary for the State to follow up with any potential juror about prior jury service because the standard jury-selection questions provided all the information needed to form a legitimate basis to strike Prospective Juror 20—specifically, that she had served as a foreperson on a prior acquitting jury. *State v. Trostle*, 191 Ariz. 4, 12 (1997) ("participation on a prior acquitting jury" can be a valid, race-neutral reason for striking potential juror). Porter also did not raise a comparative-juror analysis issue regarding Prospective Juror 2 with the superior court, and our supreme court has specifically warned appellate courts from engaging in "a retrospective comparison of jurors based on a cold appellate record . . . when alleged similarities were not raised at trial." *Medina*, 232 Ariz. at 404-05, ¶ 48 (quoting *Snyder*, 552 U.S. at 483). Thus, these arguments do not alter my conclusion.

court's ruling aside, the majority and I part ways on a more significant ground here: its interpretation of *Snyder*.[5]

**¶37**        In *Snyder*, the Court found that it could not "presume that the trial judge credited the prosecutor's assertion" concerning a juror's nervousness because the trial court upheld the strikes without explanation and that the prosecutor's second proffered reason failed to survive scrutiny "even under the high deferential standard of review that is applicable here." *Snyder*, 552 U.S. at 479. Because the prosecutor's pretextual second explanation gave rise to an inference of discriminatory intent, and because there was nothing in the record "showing that the trial judge credited the claim that [the juror] was nervous," the Court concluded the prosecutor had engaged in purposeful racial discrimination and reversed. *Id.* at 485–86. Nothing in the Court's decision purported to require a trial judge to make express findings crediting demeanor-based explanations whenever they are raised. The Court only held that it would not ignore a pretextual explanation in favor of a demeanor-based explanation when the trial judge's ruling did not make it clear which explanation it found credible. *See id.* One wonders why the Court would have engaged in an exhaustive analysis of the second reason proffered by the prosecutor if the trial judge's

---

[5]        It must be noted that before a court adopts such a sweeping new rule, it would be better to do so in a case where the argument concerning it *has actually been raised at trial and on appeal*. Porter did not request that the superior court make specific findings regarding the demeanor-based explanation offered by the State and made no argument in that court or this court that the superior court erred by failing to do so. Absent fundamental error, a party in a criminal matter waives any argument not raised below or on appeal. *See State v. Bible*, 175 Ariz. 549, 572 (1993) ("Absent fundamental error, a party usually cannot raise error on appeal unless a proper objection was made at trial."); *State v. Moody*, 208 Ariz. 424, 452, ¶ 101, n.9 (2004) ("Failure to argue a claim [on appeal] usually constitutes abandonment and waiver of that claim." (quoting *State v. Carver*, 160 Ariz. 167, 175 (1989)). Waiver principles apply to our review of *Batson* challenges. *See State v. Garza*, 215 Ariz. 56, 65, ¶ 31 (2007) (defendant waives *Batson* challenges by failing to object at trial); *Medina*, 232 Ariz. at 404–05, ¶ 48 (defendant waives a comparative-juror argument by not raising it at trial). It is troubling that the majority *sua sponte* raises an issue and resolves it without any discussion whether the *error* they have found is fundamental. *State v. Escalante*, 245 Ariz. at 142, ¶ 21.

failure to credit the demeanor-based reason alone expressly was enough to justify relief. *See id.* at 479–85.

¶38 The Supreme Court itself has since confirmed that it did not intend *Snyder* to establish a definitive rule regarding the findings a trial judge must make when reviewing a demeanor-based explanation. *Thaler v. Haynes*, 559 U.S. 43, 47–49 (2010) (per curiam). In *Haynes*, the Court rejected the argument that *Snyder* established such a rule, explaining that "in light of the particular circumstances of the case, we held that the peremptory challenge could not be sustained on the demeanor-based ground, which might not have figured in the trial judge's unexplained ruling." *Id.* at 49 (citing *Snyder*, 552 U.S. at 479–86). The Court also noted that *Snyder*'s discussion of the trial judge's ruling in that case "[did] not suggest that, in the absence of a personal recollection of the juror's demeanor, the judge could not have accepted the prosecutor's explanation." *Id.*

¶39 Most federal circuits to consider this issue in the wake of *Snyder* and *Haynes* have held that *Snyder* did not establish a rule requiring express findings concerning demeanor-based explanations. *See, e.g.*, *Sifuentes v. Brazelton*, 825 F.3d 506, 530 (9th Cir. 2016) (citing *Haynes* and finding no unreasonable determination of facts where trial court failed to credit demeanor-based explanation); *United States v. Thompson*, 735 F.3d 291, 300–01 (5th Cir. 2013); *United States v. Moore*, 651 F.3d 30, 42 (D.C. Cir. 2011), *aff'd in part on other grounds sub nom. Smith v. United States*, 568 U.S. 106 (2013); *Smulls v. Roper*, 535 F.3d 853, 860–61 (8th Cir. 2008) (en banc). *But see United States v. Rutledge*, 648 F.3d 555, 559–62 (7th Cir. 2011) (explaining Seventh Circuit's interpretation of *Snyder* and distinguishing *Haynes* on the basis that it was "restricted by the standards of review appropriate in *habeas corpus* proceedings"). Several states' supreme courts have also found that *Snyder* did not create such a rule. *See, e.g.*, *People v. Beauvais*, 393 P.3d 509, 521 (Colo. 2017) ("We agree with the courts that confine *Snyder* to its facts."); *State v. Jacobs*, 32 So. 3d 227, 235 (La. 2010) ("Applying the rule of *Thaler v. Haynes* to this case, the trial court's failure to comment on the prosecutor's demeanor-based reason does not mean the peremptory challenge should automatically be rejected."); *Davis v. State*, 76 So. 3d 659, 663–64 (Miss. 2011) (upholding strike when the only reason offered was demeanor-based even without a specific finding of credibility because the court "must have credited" it by denying the *Batson* challenge).

¶40 Likewise, no court in *Arizona* has held that *Snyder* mandates express findings by the superior court, regardless of whether the proffered explanation at issue is based on demeanor. A search for Arizona appellate decisions referencing *Snyder* returns 37 results. Of these 37 cases, not one

interprets *Snyder* as creating an express findings requirement. Indeed, some explicitly reject that argument. *See, e.g.*, *State v. Ybarra*, 2 CA-CR 2017-0286, 2019 WL 2233299, at *6, ¶ 25 (App. May 22, 2019) (mem. decision) ("Neither [*Foster v. Chatman* nor *Snyder*] require[] a court to make explicit findings as to intent, demeanor, or credibility in the third step."); *State v. Palafox*, 2 CA-CR 2012-0101, 2013 WL 709624, at *4, ¶ 17 (App. Feb. 26, 2013) (mem. decision) (citing *Haynes*, 559 U.S. at 47–48) ("And we can rely upon the court's independent evaluation of jurors' demeanors when it assesses a prosecutor's stated justifications on such grounds, even absent specific findings on the record.").

¶41 Moreover, in a recent case, our supreme court found no clear error in a superior court's finding of no purposeful discrimination, even though one of the State's proffered explanations was demeanor-based and the superior court specifically found it could not verify the juror's alleged demeanor. *Escalante-Orozco*, 241 Ariz. at 272, ¶¶ 36–37. And contrary to the majority's assertion, *supra* ¶¶ 19–20, our supreme court has also continued to find no clear error in the superior court's finding of no purposeful discrimination at the third step of the *Batson* framework, even when that finding is only implicit. *See State v. Lynch*, 238 Ariz. 84, 104, ¶ 70 (2015) ("The trial court found that the State's proffered reasons for the strikes were race neutral, implicitly ruling that Lynch did not carry his burden of proving purposeful racial discrimination."), *rev'd on other grounds*, 136 S. Ct. 1818 (2016). In sum, the great weight of authority, both within Arizona and outside of it, establishes that *Snyder* does not require the rule the majority imposes here.

¶42 This is not to say that Arizona may not adopt a requirement that the superior court must make an express finding regarding a demeanor-based explanation when it is raised. *Johnson v. California*, 545 U.S. 162, 168 (2005) (States "have flexibility in formulating appropriate procedures to comply with *Batson*"). But in my view, such a rule does little to ensure that *Batson* is meaningfully enforced. The problems surrounding *Batson* are not solved by heaping technical requirements upon the superior court. That does little more than create a trap for superior court judges that, once triggered, might require a remand even in situations where it is clear from the record that no discrimination occurred. And in the face of clearly established precedent declining to impose such a requirement on the superior court, the decision to adopt such a rule must be left to our supreme court. *See State v. Smyers*, 207 Ariz. 314, 318, ¶ 15, n.4 (2004) ("The courts of this state are bound by the decisions of [the Arizona Supreme Court] and do not have the authority to modify or disregard [its] rulings."); *State v. Gentry*, 247 Ariz. 381, 385, ¶ 13 (App. 2019) (request to adopt Washington's

*Batson* framework rejected in the face of "well-established Arizona legal precedent").

**¶43** Accordingly, because the majority's interpretation of *Snyder* is incorrect, creates a rule that falls within the province of our supreme court, and goes outside the scope of this appeal, its holding cannot stand.

**C.** **Although the Superior Court's Ruling Should Be Affirmed, Our Supreme Court Should Consider Whether Arizona's *Batson* Framework Should be Altered to Increase Its Effectiveness.**

**¶44** At its core, I believe what the majority truly takes issue with in this case is not the superior court's findings, but *Batson* itself. I share their frustration. From its inception, *Batson*'s framework has been criticized as a well-intentioned but ultimately ineffective means of ending the discriminatory use of peremptory strikes. *See, e.g.*, *Batson*, 476 U.S. at 102–03 (Marshall, J., concurring) ("The decision today will not end the racial discrimination that peremptories inject into the jury-selection process."); *Miller-El v. Dretke*, 545 U.S. 231, 270 (2005) (Breyer, J., concurring) ("[T]he use of race- and gender-based stereotypes in the jury-selection process seems better and more systematized than ever before."); *State v. Saintcalle*, 309 P.3d 326, 334 (Wash. 2013) ("Twenty-six years later it is evident that *Batson* . . . is failing us.").[6] Several states' supreme courts have also recently called for studies to examine the *Batson* framework's ability to guard against impermissible discrimination in jury selection. *See State v. Holmes*, 221 A.3d 407, 436–37 (Conn. 2019) (announcing the creation of a jury selection task force to study and propose solutions to the jury selection process in Connecticut); *Supreme Court Announces Jury Selection Work Group*,

---

[6] The *Batson* framework has also been heavily criticized by legal scholars. *See, e.g.*, Jonathan Abel, Batson's *Appellate Appeal and Trial Tribulations*, 118 Colum. L. Rev. 713, 717–23 (2018) (collecting scholarly critiques of *Batson*); Antony Page, Batson's *Blind-Spot: Unconscious Stereotyping and the Peremptory Challenge*, 85 B.U. L. Rev. 155, 156 (2005) (asserting *Batson*'s framework is "woefully ill-suited to address the problem of race and gender discrimination in jury selection" in part because of its inability to address the impact of "unconscious bias on jury selection"); Ronald F. Wright et al., *The Jury Sunshine Project: Jury Selection Data as a Political Issue*, 2018 U. Ill. L. Rev. 1407, 1417–18, 1426–27 (2018) (describing past jury-selection studies and, after an empirical study of jury selection in 1306 felony trials held in North Carolina in 2011, concluding race still plays a significant role in the removal of jurors in that state).

California Courts Newsroom, https://newsroom.courts.ca.gov/news/ supreme-court-announces-jury-selection-work-group (last visited Mar. 25, 2020). Despite this persistent criticism and the widespread desire for more effective measures, the traditional *Batson* framework remains the primary tool by which state courts resolve challenges to allegedly discriminatory peremptory strikes, including in Arizona. *See, e.g.*, *Escalante-Orozco*, 241 Ariz. at 267, ¶¶ 13–14; *Medina*, 232 Ariz. at 404–05, ¶¶ 48–50.

¶45 *Batson* was not intended to preclude efforts by states to provide more robust bulwarks against discrimination during the jury-selection process. *Johnson*, 545 U.S. at 168. The Court has long said that states have "wide discretion, subject to the minimum requirements of the Fourteenth Amendment, to experiment with solutions to difficult problems of policy." *Smith v. Robbins*, 528 U.S. 259, 273 (2000). In line with this principle, several state courts have attempted to correct the deficiencies of *Batson* by modifying or outright eliminating components of the *Batson* framework. *See, e.g.*, *People v. Gutierrez*, 395 P.3d 186, 201–02 (Cal. 2017) (reaffirming requirement that comparative-juror analysis be conducted, where the record permits, even if raised for the first time on appeal); *State v. Edwards*, 102 A.3d 52, 67, n.16 (Conn. 2014) (eliminating *Batson*'s *prima facie* case of discrimination requirement); *Truehill v. State*, 211 So. 3d 930, 942 (Fla. 2017) (same); *Conner v. State*, 327 P.3d 503, 509 (Nev. 2014) (charging trial courts with thoroughly reviewing *Batson* challenge and creating an inclusive record). However, no state has engaged in more intense efforts to reform and strengthen the *Batson* framework than Washington.

¶46 In 2013, the Washington Supreme Court held that the continued impact of race in Washington's jury-selection process required it to strengthen *Batson*'s existing protections and "to begin the task of formulating a new, functional method to prevent racial bias in jury selection." *Saintcalle*, 309 P.3d at 338–39. This call to action led the court to adopt Washington General Rule 37 in April 2018, which aims to "eliminate the unfair exclusion of potential jurors based on race or ethnicity." Wash. Gen. R. 37.[7] Later that same year, in *State v. Jefferson*, 429 P.3d 467, 480

---

[7] Rule 37 attempts to accomplish this goal in several ways. First, it removes the requirement that the challenging party prove purposeful discrimination. Instead, the court must determine only whether "an objective observer could view race or ethnicity as [a] factor in the use of the peremptory challenge." Wash. Gen. R. 37(e). It also provides a list of circumstances the court should consider when evaluating a strike under this test. Wash. Gen. R. 37(g). Second, the rule lists several presumptively

(Wash. 2018), the court took the extra step of declaring that the proper question at the third step of Washington's *Batson* framework "is not whether the proponent of the peremptory is acting out of purposeful discrimination," but whether "an objective observer could view race and ethnicity as a factor in the use of the peremptory challenge." Unlike the original third step of *Batson*, Washington's "objective observer" standard permits *de novo* review of the trial court's findings and conclusions. *Id.* These developments have already gained recognition, although not yet adoption, in other states' courts. *See, e.g.*, *People v. Bryant*, 253 Cal. Rptr. 3d 289, 310 (Ct. App. 2019) (Humes, P.J., concurring) (citing the objective observer test with approval in advocating for reform to California's *Batson* framework); *State v. Veal*, 930 N.W.2d 319, 361–62 (Iowa 2019) (Appel, J., concurring in part and dissenting in part) (advocating, in line with Washington's reforms, for "a revision of [Iowa's] approach when the last African-American is removed from the jury with a peremptory strike"); *Tennyson v. State*, ___ S.W.3d ___, 2018 WL 6332331, at *6, n.6, *7 (Tex. Dec. 5, 2018) (Alcala, J., dissenting from refusal for discretionary review) ("[I]t is time for courts to enact alternatives to the current *Batson* scheme to better effectuate its underlying purpose.").

¶47        Arizona has continued to apply the *Batson* framework with little reevaluation or alteration. I believe the time has come for us to discuss reformulating our structure to meaningfully further *Batson*'s purpose, but such a review cannot be accomplished in an appeal. *See Holmes*, 221 A.3d at 407, 434 (finding it necessary to "uphold under existing law the trial court's finding that the prosecutor had not acted with purposeful discrimination in exercising a peremptory challenge," but also to take the opportunity to convene a working group to "study the problem and resolve it via the state's rule-making process"). A rule change petition was recently submitted advocating for our supreme court to adopt a new procedural rule governing jury selection modeled after Washington General Rule 37. Central Arizona National Lawyers Guild, *R-20-009 Petition to Amend the Rules of the Supreme Court by Adopting a New Rule: Rule 24 – Jury Selection*, https://www.azcourts.gov/Rules-Forum/aft/1081 (last visited Mar. 25, 2020). Indeed, the rule-making process may be the ideal forum to engage in this much-needed discussion. *See Holmes*, 221 A.3d at 436–37, 437, n.25

---

invalid reasons for exercising a peremptory strike, such as "having prior contact with law enforcement officers" or "living in a high-crime neighborhood." Wash. Gen. R. 37(h). Finally, it requires that any party intending to strike a juror due to demeanor, attitude, or behavior must "provide reasonable notice to the court and the other parties so the behavior can be verified and addressed in a timely manner." Wash. Gen. R. 37(i).

(concerning *Batson* reform, a rule-making process is "better suited to consider the array of relevant studies and data in this area, along with the interests of the stakeholders"). But whatever path reform of the *Batson* framework takes within Arizona, I find merit in the state of Washington's "objective observer" test.

¶48          Under Washington's reformulation of *Batson*'s third stage, the superior court could protect the integrity of the jury-selection process from both purposeful and unconscious discrimination. In turn, appellate courts would benefit from the ability to engage in meaningful review of the superior court's decision under a *de novo* standard of review. The lingering menace of racial discrimination within our justice system requires nothing less. And the need for such a test is particularly pressing where, as in this case, the State strikes every potential juror of a criminal defendant's racial group and nearly removes every other minority juror. However, I do not believe this court has the authority to announce such a radical change to our state's implementation of the *Batson* framework; that is a task left to our supreme court. I respectfully implore the court to take up that task.

## CONCLUSION

¶49          Until our supreme court changes our approach to *Batson* issues, we must apply the law that exists—the majority did not do that in this case. On this issue, I dissent.



AMY M. WOOD • Clerk of the Court
FILED:  AA